**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GARY DRESSLER, et al.,
      Plaintiffs,

vs.

TERESA WINKLER, et al.,
      Defendants.

Case No. 1:11-cv-089
Barrett, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

This matter is before the Court on a motion to dismiss filed by defendants Teresa (Tracy)

Winkler, David Linnenberg, Anthony Upton, and Kevin Celarek (Doc. 3); plaintiffs Gary

Dressler and Jeffry Smith's response in opposition (Doc. 6); and defendants' reply in support of

their motion to dismiss.  (Doc. 7).

## Procedural History

### A. The Complaint

Plaintiffs are residents of Green Township in Hamilton County, Ohio.  (Doc. 1, at ¶3).

Defendants Winkler, Linnenberg and Upton are Green Township Trustees, and defendant

Celarek is Administrator of Green Township.  (*Id.*, at ¶4).  Plaintiffs bring this action under 42

U.S.C. § 1983 against defendants in their individual and official capacities for violation of

plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs allege that defendants, acting under color of state and local law, acted with the intent to

deprive plaintiffs of their First Amendment rights to freedom of speech and to petition the

government for redress of grievances.  The complaint seeks injunctive relief and damages.

The complaint makes the following allegations: In 1998, the Green Township Trustees

then in office adopted Resolution #98-0209-I, "Resolution Establishing Policies for the Conduct

of Meetings of the Board of Trustees." (Doc. 1, at ¶6). Resolution #98-0209-I includes the

following provisions:

- "The trustees reaffirm the basic principle that citizens who wish to speak at a meeting have a right to be heard." (Doc. 1, at ¶7).

- "[C]itizens who wish to address an issue that is on the written agenda for a meeting of the Trustees shall be given an opportunity to be heard." (*Id.*, at ¶ 8).

- "Any citizen who wishes to speak to an issue that is not on the written agenda of the meeting must register as a delegation with the administrative office in advance of the next meeting. The deadline for registering as a delegation is 3:00 p.m. on the Friday before the meeting. Persons registering, as a delegation shall provide their name, address and a brief statement as to the issue they wish to address to the Trustees." (*Id.*, at ¶9).

- Failure of any citizen to respect the policies for addressing the Trustees can result in the passage of a Resolution by the Board declaring the citizen to be disorderly, and the removal of the disorderly person from the meeting." (*Id.*, at ¶10).

A written agenda has been made available prior to each Board of Trustees meeting since

February of 2010. (*Id.*, at ¶11).

On or about June 28, 2010, the Trustees adopted Resolution #10-0628-K, which limits

the amount of time a citizen/resident may speak at a Trustees meeting to five minutes. (*Id.*, at

¶12). At the beginning of the July 12, 2010 meeting, Trustee Linnenberg reaffirmed that

Resolution #98-0209-I governed the conduct of the meetings; that the meetings were for the

purpose of conducting township business; and that citizens who wished to speak at the meetings

had a right to be heard within reasonable guidelines. (*Id.*, at ¶13). The minutes of the meeting

reflect that Linnenberg read Resolution #98-0209-I and stated that it would be followed from that

point forward. (*Id.*, at ¶15). During a regular Trustee meeting on July 26, 2010, Linnenberg

referred to the resolution and said that politician Jim Tarbell could not speak unless he was on

the agenda. (*Id.*, at ¶16).

On January 10, 2011, during the regular Trustee meeting and contrary to Resolution #98-0209-I , Trustee Winkler stated that the meetings would be run for their intended purpose of conducting Board business; that the Board would hear from those in attendance at a given meeting when the Board felt it would be beneficial on a specific resolution or topic; and at that time, those individuals would be asked to step forward and speak. (*Id*., at ¶17). During that meeting, while Winkler was reading Resolution #11-0110-G, Green Township Fiscal Officer Thomas Straus informed Winkler that plaintiff Dressler was attempting to be recognized. (*Id*., at ¶18). Defendant Celarek encouraged Winkler not to recognize Dressler by stating several times, "Keep going." (*Id*.). Dressler reminded Winkler that her action was "contrary to the Resolution about people talking." (*Id*., at ¶19). Contrary to Resolution #98-0209-I and Ohio Rev. Code § 121.22,[1] Winkler stated that the Ohio Open Meetings Act requires that a person be permitted to attend and observe a public meeting but it does not bestow the right to be heard at the meeting, and a disruptive person waives the right to attend a meeting and may be removed. (*Id*., at ¶20).

Prior to 3:00 p.m. on January 21, 2011, Dressler contacted Executive Assistant Jennifer Triantafilou and requested to be placed on the meeting agenda for the January 24, 2011 Trustee meeting to address "recently passed resolutions." (*Id*., at ¶21). Contrary to Resolution #98-0209-I, Triantafilou informed Dressler she would contact Winkler for approval. (*Id*.). That same day, Winkler telephoned Dressler and asked for a detailed explanation regarding what he wished

---

[1]Ohio Rev. Code § 121.22 requires that public officials "conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law" and further states: "All meetings of any public body are . . . public meetings open to the public at all times."

to discuss at the meeting. (*Id.*, at ¶22). Dressler replied that Resolution #98-0209-I required that individuals provide only a brief statement of the issue they wished to address and did not require approval of the Trustees to speak at a meeting. (*Id.*). Winkler denied plaintiff's request to speak at the meeting. (*Id.*).

At the January 24, 2011 regular Trustee meeting, during the reading of Resolution #11-0124-E, plaintiff Smith asked Winkler for an opportunity to speak on the resolution being discussed. Winkler informed Smith that the Trustees would not entertain public comment "unless we ask people for their input on . . . the regular business of the board." (*Id.*, at ¶23). Winkler informed Smith that he could ask a quick question, but he could not have an opportunity to speak. (*Id.*). When Smith persisted in speaking, Winkler asked him if he would like to leave the meeting or be seated. (*Id.*). Smith replied, "I would like you to follow your policy and let me speak." (*Id.*). During the reading of Resolution #11-0124-F at the same meeting, Smith stated that he would like to speak on that resolution also, but Winkler said that he could not and reaffirmed that the Trustees' "policy" was "to allow the residents to speak when we feel that it would be material to a decision that we're making." (*Id.*, at ¶ 24). After Smith disputed that this is what the resolution stated, Dressler spoke up and said that Winkler had read "this to us two weeks ago. You read the Ohio sunshine law. . . ." (*Id.*). Winkler warned that she would make a motion to remove Dressler if he did not take his seat, and Dressler stated that Winkler was violating the resolution and stopping people from speaking. (*Id.*). At that point, Winkler, Upton and Linnenberg passed a resolution to have Dressler removed from the meeting. (*Id.*, at ¶24).

At the close of the meeting, Smith told Winkler that he had a question on the new speaking policy which she had previously brought up. Winkler told Smith they were not talking

4

about that right now and she would talk to him about it after the meeting. (*Id.*). Smith insisted that he wanted to speak about it in public and asked how he could do that. (*Id.*). Winkler told Smith if he wanted to sign up to speak at another meeting and tell the Trustees exactly what he wanted to talk about, "that would be great." (*Id.*, at ¶25). Smith responded that he wanted to speak at the next meeting on the "pick and choose speaking policy." (*Id.*). On February 11, 2011, contrary to Winkler's prior statement, Triantafilou contacted Smith by phone and informed him that Winkler had instructed her to remove him from the February 14, 2011 Trustee meeting agenda. (*Id.*, at ¶26).

.       Plaintiffs allege as their first claim for relief that defendants, acting in their official capacities, violated plaintiffs' First and Fourteenth Amendment rights to freedom of speech and freedom to petition the government. Plaintiffs specifically claim that defendants violated their rights by threatening them with removal from a Trustee meeting if they continued their attempts to force the Trustees to comply with Resolution #98-0209-I and by actually having Dressler removed from a meeting for this reason. (*Id.*, at ¶¶32-34). Plaintiffs claim that defendants acted in concert and that their actions were "purposeful with intent to ignore official policy and custom." (*Id.*, at ¶¶31, 37). Plaintiffs make essentially the same factual allegations in support of their second claim for relief, which they bring against all defendants in their individual capacities. (*Id.*, at ¶¶38-47). As relief, plaintiffs ask that the Trustees be permanently enjoined from voiding, amending, altering or superseding Resolutions #98-0209-I and #10-0628-K, and they request compensatory and punitive damages against each defendant in his or her individual capacity.

**B. Defendants' Motion to Dismiss**

Defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 3). Defendants contend that plaintiffs have failed to allege a constitutional violation; the Trustees are entitled to absolute legislative immunity; all defendants are entitled to qualified immunity insofar as they are sued in their individual capacities; and the claim brought against defendants in their official capacities must be dismissed because the claim is actually against the political subdivision and plaintiffs do not allege that defendants acted pursuant to an unconstitutional policy attributable to Green Township.

**Applicable Law**

**A. Rule 12(b)(6) Standard**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the complaint need not contain "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), under Fed. R. Civ. P. 8(a)(2), "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" is required. *Ashcroft v. Iqbal*, __U.S.__, 129 S. Ct. 1937, 1949 (2009). As the Supreme Court explained in *Iqbal*: "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks, citations, and alterations omitted).

Pursuant to *Twombly* and *Iqbal*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Id.* (quoting *Twombly*,

550 U.S. at 570). A claim is plausible on its face if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In reviewing a complaint, the Court is guided by the following principles: First, the general rule that the court must accept as true all allegations in the complaint "is inapplicable to legal conclusions." *Id.* This means that conclusory recitals of the elements of a claim, including legal conclusions couched as factual allegations, "do not suffice." *Id*. at 1949-50 ("[Rule 8] does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Plausibility is a context-specific inquiry, and the allegations in the complaint must "permit the court to infer more than the mere possibility of misconduct," namely, that the pleader has "show[n]" entitlement to relief. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

When a plaintiff proceeds pro se, the court will "hold [the complaint] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## B. First Amendment Claim under § 1983

To establish a claim under § 1983, plaintiff must prove that "(1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001).

The constitutional right at issue in this case is plaintiffs' First Amendment right to freedom of speech and to petition the government. Although the First Amendment envisions the "uninhibited, robust, and wide-open" debate of public issues, the freedom of speech is not

7

absolute. *Kirkland v. Luken*, 536 F. Supp.2d 857, 873 (S.D. Ohio 2008) (Weber, J.) (citing

*Frisby v. Schultz*, 487 U.S. 474, 479 (1988) (citations omitted)). The First Amendment does not

guarantee persons the right to communicate their views "at all times and places or in any manner

that may be desired." *Id.* (citing *Heffron v. International Soc'y for Krishna Consciousness*, 452

U.S. 640, 647 (1981)). The law allows the imposition of different levels and kinds of restrictions

on speech, depending on the type of government property on which the speech occurred. *Id.*

(citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44-46 (1983)).

Where a meeting of a legislative body or governing board has been opened to the public

for comments on non-agenda items, the meeting is a forum "opened for use by the public as a

place for expressive activity. . . ." *Id.* (citing *Schlegel, III. v. Craft*, No. Civ.A.5:03CV-268-R,

2005 WL 194551 (W.D. Ky. Aug. 11, 2005); *Princeton Educ. Assoc. v. Princeton Bd. of Educ.*,

480 F. Supp. 962, 969 (S.D. Ohio 1979) (Porter, C.J.)). "Although a state is not required to

indefinitely retain the open character of the facility, as long as it does so it is bound by the same

standards as apply in a traditional public forum. Reasonable time, place and manner regulations

are permissible, and a content-based prohibition must be narrowly drawn to effectuate a

compelling state interest." *Kirkland*, 536 F. Supp.2d at 873 (citing *Perry*, 460 U.S. at 46). *See*

*also Princeton Educ. Assoc.*, 480 F. Supp. at 969 ("Content-neutral restrictions on matters such

as the time and manner of speech may be imposed at public meetings, to enable public bodies to

conduct the business of government without undue interruption or distraction.").

Time, place and manner regulations that are content-neutral must be narrowly tailored to

serve a significant government interest and leave open ample alternative channels of

communication. *Kirkland,* 536 F. Supp.2d at 874 (citing *Bd. of Airport Comm'rs v. Jews for*

*Jesus, Inc.*, 482 U.S. 569, 573 (1987). "The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.* (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 295 (1984)). "Government regulation of expressive activity is content neutral so long as it is 'justified without reference to the content of the regulated speech.'" *Id.* (citing *Ward,* 491 U.S. at 791) (citing *Clark*, 468 U.S. at 293).

## C. Absolute Immunity

Local legislators are afforded qualified immunity for administrative duties. *Id.* at 873 (citing *Haskell v. Washington Twp.*, 864 F.2d 1266, 1277 (6th Cir. 1988)). However, local legislators' immunity from suit in their individual capacities for legislative duties is absolute. *Id.* (citing *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998)). *See also Smith v. Jefferson County Bd. of School Comm'rs*, 641 F.3d 197, 218-219 (6th Cir. 2011). Thus, the issue in a case such as this is whether the challenged action falls within the scope of the legislators' legislative duties, so as to entitle the defendants to absolute immunity for claims brought against the defendants in their individual capacities, or whether the challenged action constitutes an administrative duty, such that the defendants are afforded only qualified immunity.

Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54 (citing *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)). Whether an act is legislative turns on the nature of the act, and the motive or intent of the official performing the act is irrelevant. *Bogan*, 523 U.S. at 54. In *Eastland v. U.S. Servicemen's Fund*, a case involving the immunity of United States Senators, the Supreme Court

9

determined that legislative immunity applies to acts which are "an integral part of the deliberative and communicative processes" by which legislators participate in proceedings regarding the consideration, passage, or rejection of proposed legislation or with respect to other matters within their jurisdiction. 421 U.S. 491, 504 (1975) (citing *Gavel v. United States*, 408 U.S. 606, 625 (1972)).

In *Bogan*, the Supreme Court explained the rationale for extending immunity to the legislative acts of local legislators:

> Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability. . . . Furthermore, the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace. . . . And the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability.

523 U.S. at 52 (citations omitted).

In *Kirkland*, this Court acknowledged that the Sixth Circuit had not ruled on the issue of "whether the monitoring and/or disciplining of the conduct of speakers at a public hearing" constitutes an administrative or legislative act. 536 F. Supp.2d at 873. The Court noted that other circuits which had addressed this issue had found that such action constitutes administrative action. *Id*. (citing *Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1252 (10th Cir. 1998) (vote to ban the plaintiff from all future Commission meetings and subsequent decision to prohibit him from participating in or speaking at meetings were administrative acts as they were efforts to monitor and discipline his presence and conduct at future meetings and did not concern the enactment or promulgation of public policy) and *Hansen v. Bennett*, 948 F.2d 397, 402-03 (7th Cir. 1991) (mayor was not acting in legislative capacity

when he regulated an open public discussion of various issues). However, the Court found it unnecessary to resolve the issue in the case before it because the Court determined that no constitutional violation had occurred, and the defendants were therefore protected by qualified immunity from claims brought against them in their individual capacities. *Id.*

Subsequent to the decision in *Kirkland*, at least two District Courts within the Sixth Circuit have determined that moderating an individual's speech or conduct at a public hearing falls within the sphere of protected legislative activity. *See Afjeh v. Village of Ottawa Hills*, No. 3:09cv2672, 2010 WL 1795973 (N.D. Ohio May 5, 2010); *Timmon v. Wood*, 633 F. Supp.2d 453, 460 (W.D. Mich. 2008). In *Afjeh*, the plaintiff alleged that defendant limited her speech regarding the rehiring of the Village Manager during a Village council meeting by refusing to let her speak more than one minute at the meeting and threatening her with ejection despite her assertion that she was not done speaking. *Id.*, at \*\*1-2. The Court distinguished *Hansen* on the ground that the speech there occurred during an open comment portion of a council meeting when citizens were permitted to speak on any issue, including non-agenda issues, and during which no legislative business was conducted. *Id.* at \*2. The Court also noted that *Hansen* emphasized its "narrow holding" based on the fact that the speech occurred in an open comments session as opposed to during a public hearing at which specific plans were under consideration. *Id.* (citing *Hansen*, 948 F.2d at 403). In *Timmon*, the District Court determined that the defendants' actions in directing speaker's comments toward relevant, city matters were legislative actions, even though the actions occurred during the public-comment period of the city council meetings, because such conduct was integral to furthering the recognized legislative function of determining the "priorities of the city and the services the city provides its

11

constituents." 633 F. Supp.2d at 460 (citing *Canary v. Osborn*, 211 F.3d 324, 331 (6th Cir. 2000)). The Court noted that the defendant's role during public comment was to facilitate information gathering and to maintain orderly and relevant discussion to further that role. *Id.* at 461. The Court stated that while the defendants may have performed that role in contravention of the plaintiff's First Amendment rights, the defendants' actions were nonetheless legislative functions for which they were entitled to absolute immunity from suit. *Id.*

## D. Qualified Immunity

In determining whether qualified immunity applies, the general rule is that government officials performing discretionary functions are immune from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Resolving the qualified immunity issue requires a two-part inquiry: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" (2) If a violation could be made out on a favorable view of the parties' submissions, was the right clearly established? *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The District Court need not address the two prongs of the inquiry in this particular order. *Pearson v. Callahan*, 555 U.S. 223 (2009).

### Resolution

The actions which plaintiffs challenge as violative of their First Amendment rights can be summarized as follows:

1.  Winkler, with Celarek's encouragement, refused to recognize Dressler when he attempted to be heard at the January 10, 2011 Trustee meeting during the reading of Resolution #11-0110-G.

2.   Winkler denied plaintiff Dressler's request for prior approval to speak at the January 24, 2011 Trustee meeting regarding "recently passed resolutions" after plaintiff refused to provide a detailed explanation of what he wished to discuss at the meeting.

3.   Winkler allowed Smith the opportunity to ask a question but denied him the opportunity to speak at the January 24, 2011 Trustee meeting regarding Resolutions #11-0124-E and #11-0124-F, and she informed him that he would be escorted from the building if he did not take his seat when he persisted in speaking.

4.   Winkler, Upton and Linnenberg passed a resolution to have Dressler removed from the January 24, 2011 meeting after he joined Smith in speaking and persisted after being warned that he would be removed from the building if he did not take his seat.

5.   Although Winkler indicated to Smith that he could speak at another meeting if he signed up and specified what he wanted to discuss, Triantafilou contacted Smith on February 11, 2011, and informed him that Winkler had instructed her to remove Smith from the February 14, 2011 Trustee meeting agenda.

Accepting the allegations of the complaint as true, the action taken by the Trustees to restrict plaintiff Dressler's speech during the January 10, 2011 Trustee meeting clearly fell within the scope of the Trustees' legislative duties. Dressler attempted to be heard during the reading of Resolution #11-0110-G. The complaint includes no facts alleging that Dressler sought to address an issue on the written agenda of the meeting.[2] Accordingly, by moderating plaintiff Dressler's speech and acting to prevent him from persisting in interrupting the reading of the resolution during a part of the meeting when plaintiff had no right to speak publicly, the Trustees were performing their legislative functions. *Cf. Affeh*, 2010 WL 1795973. The Trustees should be granted absolute immunity in connection with their actions at the January 10, 2011 Trustee meeting.

A determination as to whether the Trustees should be granted absolute legislative

---

[2]Accepting the allegations of the complaint as true, Resolution #98-0209-I, read in conjunction with Resolution #10-0628-K, implies that so long as an item is on the written agenda for a meeting, any member of the public has the right to be heard on that item for a period not to exceed five minutes. (Doc. 1, at ¶¶ 8, 12).

13

immunity in connection with their actions at the January 24, 2011 regular Trustee meeting cannot be made on a motion to dismiss. Construing the allegations of the pro se complaint liberally in plaintiffs' favor as the Court must, *see Haines,* 404 U.S. at 520, plaintiffs asked to address a matter then under discussion by the Trustees, *i.e.*, Resolution 11-0124-F. However, it is not clear from the allegations of the complaint: (1) whether the resolution was on the written agenda so that the Trustees were required to give plaintiffs an opportunity to address it at the meeting pursuant to Resolution #98-0209-I (limited to a period of less than five minutes by the terms of Resolution #10-0628-K); and (2) whether plaintiffs interrupted Winkler while she was reading the resolution, at which point the meeting would not have been open to public comment, or whether they attempted to speak after she was finished reading the resolution. Because the nature of the proceedings at the time plaintiffs sought to speak is not clear from the pleadings, the Trustees should not be granted legislative immunity on a motion to dismiss.

Nor should the Trustees be granted qualified immunity at the pleading stage in connection with their actions at the January 24, 2011 regular Trustee meeting. The Trustees contend that their conduct did not rise to the level of a constitutional violation. However, the Trustees have not cited any legal authority and have not presented any argument as to the merits of plaintiffs' First Amendment claim. The Trustees have not shown that it can be determined from the allegations of the complaint whether they were imposing a valid time, place and manner restriction during an open comments period of a public meeting, *see Princeton Educ. Assoc.*, 480 F. Supp. at 969 ("Content-neutral restrictions on matters such as the time and manner of speech may be imposed at public meetings, to enable public bodies to conduct the business of government without undue interruption or distraction"), or whether they were regulating

14

plaintiff's speech based on its content. *See Kirkland*, 536 F. Supp.2d at 873 (citing *Perry*, 460

U.S. 46) (a content-based prohibition must be narrowly drawn to effectuate a compelling state

interest). This determination, as well as a determination as to the validity of the restriction

imposed by the Trustees, must await further development of the record.[3]

Defendant Celarek claims that he is entitled to qualified immunity because the only

conduct attributable to him - urging Winkler to continue reading the resolution during the

January 10, 2011 Trustee meeting while plaintiff Dressler was attempting to be recognized - does

not constitute a violation of plaintiff's constitutional rights. It is not clear from the pleadings

what role, if any, Celarek played in conducting the Trustee meetings. Assuming Celarek had

authority to exercise control over the meetings, he should nonetheless be granted qualified

immunity on plaintiffs' claim against him in his individual capacity because the allegations of the

complaint fail to show that he violated plaintiffs' First Amendment rights. First, as stated above,

the complaint includes no facts alleging that Dressler wished to address an issue on the written

agenda of the meeting, and there are no other allegations suggesting that Celarek's action was

based on the content of plaintiff's speech. To the contrary, the complaint simply alleges that

Celarek urged Winkler to continue reading the resolution when plaintiff attempted to be

recognized, and it includes no allegations concerning the topic Dressler wished to address.

Second, because plaintiff Dressler was attempting to be recognized outside of an open comments

period of the meeting and while Winkler was conducting legislative business, it was reasonable

for defendants to impose a reasonable time, place and manner restriction and to deny plaintiff the

---

[3]Defendants remain free to reassert their rights to legislative and/or qualified immunity on a motion for summary judgment.

opportunity to speak at that particular time. *See Kirkland.* 536 F. Supp.2d at 874. Defendant

Celarek therefore did not violate plaintiff Dressler's First Amendment right to free speech by

discouraging Winkler from allowing plaintiff an opportunity to speak outside of the open

comments period of the meeting.

The remaining actions which plaintiffs challenge as violative of their First Amendment

rights did not occur during a Trustee meeting. These were (1) Trustee Winkler's denial of

plaintiff Dressler's request for prior approval to speak at the January 24, 2011 Trustee meeting

regarding "recently passed resolutions," and (2) Winkler's instruction to have Smith removed

from the February 14, 2011 Trustee meeting agenda. The Court finds that these actions are

administrative actions taken to monitor plaintiffs' conduct at future meetings rather than acts

falling within the legislative sphere. *See Kamplain*, 159 F.3d at 1252. There is nothing in the

complaint to show that Winkler's actions related to the passage, rejection or communication of

legislation or the formulation of public policy. The Court therefore finds for purposes of the

motion to dismiss that Winkler's actions fell outside the sphere of her legislative duties, and

Winkler should not be granted absolute legislative immunity for these particular actions.

The question becomes whether Winkler is entitled to qualified immunity for her actions

taken outside of the Trustee meetings. Winkler claims she is entitled to qualified immunity

because her actions do not rise to the level of a constitutional violation.

According to the allegations of the complaint, under the terms of Resolution #98-0209-I,

at least a portion of the Green Township Trustee meetings are open to the public for expressive

activity, subject to reasonable time, place and manner restrictions. The resolution requires any

citizen who wishes to speak to an issue that is not on the written agenda of the meeting to register

16

with the administrative office and to provide their name, address, and a brief statement of the issue they wish to address. (Doc. 1, at ¶9). Plaintiffs sought advance permission to speak at the January 24, 2011 and February 14, 2011 meetings regarding the resolutions passed by the Trustees, but Winkler denied their requests. It is not clear from the complaint why Winkler denied plaintiffs the opportunity to speak. Winkler may be able to show upon further development of the record that she denied plaintiffs permission to speak based on reasonable, content-neutral time, place and manner restrictions or, assuming she denied plaintiffs' request to speak based on the content of the proposed speech, that plaintiffs' speech was curtailed to serve a compelling state interest. *See Perry*, 460 U.S. at 46. However, these are issues which cannot be resolved on a motion to dismiss. Because the Court is unable to determine at the pleading stage whether Winkler's actions violated plaintiffs' clearly-established First Amendment rights, Winkler should not be granted qualified immunity from liability based on her denial of advance permission to plaintiffs to speak at the Trustee meetings.[4]

Finally, defendants contend that plaintiffs' claim against them in their official capacities must be dismissed because no constitutional deprivation occurred. A claim brought against a public official in his or her official capacity is equivalent to a claim against the entity the official represents. *Scott v. Clay County, Tennessee*, 205 F.3d 867, 879 (6th Cir. 2000) (citing *Claybrook v. Birchwell*, 199 F.3d 350, 356 n. 4 (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In order to hold a governmental entity liable under § 1983, the entity's "policy or custom" must have played a part in the violation of the plaintiff's constitutional rights. *Graham*, 473 U.S. at 166. *See also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (1989) (citing *Monell v. New*

---

[4]Winkler remains free to reassert her right to qualified immunity on a motion for summary judgment.

17

*York Department of Social Services*, 436 U.S. 658 (1978)).

Plaintiffs have failed to allege that any defendant acted pursuant to an official policy or custom. To the contrary, plaintiffs allege that each of the defendants acted purposefully "with intent to *ignore* official policy or custom." (Doc. 1, at ¶ 31) (emphasis added). Accordingly, plaintiffs' official capacity claim should be dismissed as to all defendants.

## Conclusion

The Trustees should be granted absolute legislative immunity for their conduct at the January 10, 2011 Trustee meeting. The Trustees should not be granted absolute legislative immunity and qualified immunity for their conduct at the January 24, 2011 Trustee meeting.

Plaintiffs have stated a plausible claim for relief against defendant Winkler in her individual capacity based on her refusal to grant plaintiffs permission to speak at the January 24, 2011 and February 14, 2011 Trustee meetings. These actions were outside the scope of Winkler's legislative duties, and Winkler has not established that she is entitled to qualified immunity on plaintiffs' claim insofar as it is premised on this conduct.

Plaintiffs have failed to state a claim for relief against defendants in their official capacities. Accordingly, the claim against each defendant in his or her official capacity should be dismissed.

## IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion to dismiss be **GRANTED** as to plaintiffs' official capacity claim brought against each defendant (Count I).

2. Defendants' motion to dismiss be **GRANTED** as to plaintiffs' individual capacity claim brought against defendant Celarek (Count II).

18

3. Defendants' motion to dismiss be **GRANTED** in part and **DENIED** in part as to plaintiffs' individual capacity claim brought against defendants Upton, Linnenberg, and Winkler (Count II).

Date: 10/12/11

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

GARY DRESSLER, et al.,
          Plaintiff

vs

TERESA WINKLER, et al.,
          Defendants.

Case No. 1:11-cv-089

Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

COMPLETE THIS SECTION ON DELIVERY

A. Signature

X ☑ Agent
☐ Addressee

B. Received by ( Printed Name) | C. Date of Delivery

1. Article Addressed to:

Gary Dressler
5742 Sidney Rd.
Cincinnati, OH 45233

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)      ☐ Yes

2. Article Number
   (Transfer from service label)

7003 2260 0002 6723 4187

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☑ Agent
☐ Addressee

B. Received by *( Printed Name)* | C. Date of Delivery

1. Article Addressed to:

Jeffry Smith
2810 Mt. Airy Ave
Cinti, OH 45239

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
   *(Transfer from service label)*

7003 2260 0002 6723 4194

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540